Good morning. My name is Jeff Riffer, counsel for Lucent Technologies, Inc., the appellant. I'd like to reserve four minutes for the rebuttal. Just watch the clock, Mr. Riffer. Okay. Thank you. This appeal involves whether Lucent, the respondent in the arbitration, received fair notice of the claim against it and received fair opportunity to present its argument that such a claim was improper. The most powerful support for our argument that it didn't receive such notice and it didn't receive a fair opportunity to rebut it is Schoenduve's brief. As we pointed out in ours, Schoenduve's brief made over 24 misstatements of law and misstatements of fact. It miscited Ninth Circuit cases, the CODU case. It miscited the California Supreme Court case, the AMD case. It miscited other cases. It miscited the record. And it put many of those misstatements in bold. Okay. But isn't our concern here the breadth that the arbitrator can take given the issue that is presented to the arbitrator in this case? Wasn't it pretty broadly drawn? It wasn't narrowed to the agreement, for example? The Your Honor, this is the reason why this is an unusual case is because the parties agreed and the arbitrator agreed that this is going to be a reasoned award. So this is not the usual arbitration. Reasoned award. How does that differ? I'm not sure I understand your point. Don't we normally get reasoned awards from AAA? But you don't just get a decision that says you get $4 million. You get a 17-page single-spaced statement of why the arbitrator came to that case. Sometimes you do, absolutely, Your Honor, but sometimes you don't. Well, are you saying that this was not a reasoned decision? No, it was a reasoned one. It fits the profile that you just talked about. It was something like 19 pages, single-spaced. Right. Absolutely. We're talking about scope here. Correct. I agree with that. But what makes this unusual, as I said, one, it was a reasoned award. I guess I don't understand why it's unusual. I mean, if you have a, say, baseball arbitration clause, we pick a number. Right. That would not necessarily have to be reasoned. Correct. Or like a common, another common example where there's not a reasoned one is NASD securities arbitration. Sure. Where it's very common. There are plenty of reasoned awards. Why is it, I don't understand unusual. I don't mean to pounce on that, but you seem to draw some significance for that. It is a factor. It's not that it's positive. It is one of the factors, though. But you're right, Your Honor. I am putting some reliance on it. Because I think that we'd be in a different situation today if the arbitrator in our case just said $4 million. Here, because of the reasoned award, the parties prepared their case based on that. Here, for example, the, but I agree absolutely that it's the scope. But what makes this case so unusual is that what the arbitrator ruled on was never discussed in the arbitration. The arbitration brief of Shandubi, which was filed one business a day before the arbitration, it was 22 pages long. It was in writing, obviously, by definition, 22 pages long, asserted three claims, breach of contract, tortious termination of the contract, and violation of a California civil code for willful failure to pay commissions pursuant to a written contract. All of that was in front of the arbitrator. Absolutely. And we went on all three of those claims. What makes this case unusual was that the arbitrator, without notice, ruled on two claims which were not ever arbitrated. And the key point for us was that it was without notice. The arbitrator, in the opinion, talks about quasi-contract, and then he's got one sentence on estoppel. The quasi-contract only applies if there's no written contract. Here, the parties arbitrated that there was a written contract. The issue before the arbitrator was how to interpret that contract. The pre-arbitration brief of Shandubi, starting at the excerpt of Record 190, talked that there was a written contract. The only question was how it covered the subject matter. The only question was how it was going to be interpreted. The opening statement talked about repeatedly, ten times in his opening statement at starting at the excerpt of Record from 916 to 926, Shandubi's counsel talked about how the contract covers this. There were 11 days of testimony. A hundred percent of the testimony from both sides was that this contract covered it. Mr. Shandubi, the principal, testified, excerpt of Record 930, the contract covered it. The they called an expert witness, an attorney. He testified this contract covers the dispute. The arbitrator actually at one point asked a question to one of the witnesses, a Mr. Shaw, and said, by the way, does this contract cover what you did or you didn't? And Mr. Shaw said, this is an excerpt of Record 937, 938, yes, the contract covered it. The Shandubi called the MRA itself. I'm looking at paragraph 23 on ER 845, the dispute clause. Right. Contains the standard language that if a dispute arises out of or relates to this agreement or its breach, the parties agree to submit the dispute to the mediator. And then I'm looking at ER 829, the demand for arbitration, in which the claimant basically identified the nature of the dispute as being an action to recover commissions arising from the wrongful conduct of the Respondent and the claims for relief sought that he has substantial damages arising from breach of contract and other claims against Respondents. Why isn't that broad enough to frame the scope of the arbitration that's being sought? It absolutely would be, Your Honor, if it was mentioned and, therefore, that we had some fair opportunity to address it. You got copies of that, didn't you? You got copies of his demand for arbitration. Absolutely. And subsequent to that, he filed a 22-page arbitration brief that said the three issues. He said that this is what we're going to litigate in this case, and this is what the witnesses are. These are the three issues. He defined, I agree. But if you're submitting – if the demand for arbitration is essentially to resolve a dispute that has arisen between the parties, and the demand is I'm entitled to a commission, why isn't that broad enough to include a theory of recovery that gives him commissions that he says were wrongfully withheld from him? Because the – I think that he could have argued it, Your Honor. I think that it was covered by the contract. What I think's wrongful here was, having said in writing, in the pre-arbitration brief, in opening statements, through all the testimony, that the contract covered it, and the only dispute is whether there is the interpretation of the contract, then it's not fair for the Respondent in the arbitration to lose on a claim that's diametrically opposed from that, which is there was no contract that covered this. I'm not sure it's diametrically opposed. If it is framed as being a dispute that arises out of the relationship between the parties, and the matter is submitted to the arbitrator to decide, what I hear you complaining about is he didn't award damages under the contract, but he did award damages for – in resolving the dispute that arose between the parties over entitlement to commissions. That's correct. But he awarded damages on a theory that was never argued in the case and which was, because we think this is significant, too, diametrically opposed to the way the case was argued. Quasi-contract – oh, I'm sorry. People sometimes argue in the alternative on quasi-contract and so forth. But getting back to whether disclosure – am I correct in reading the record that in the opening statement made by Lucent before the arbitrator, that Lucent made the exact point that you're making here, that the existence of an enforceable agreement precludes recovery in quasi-contract? Yes, I know, Your Honor. Yes, that there were words which – Well, let me read them to you, and you tell me what I should conclude. The sales representative was – may not recover under a theory of unjust enrichment. The existence of a valid and enforceable written agreement precludes recovery in such a quasi-contract theory. There is no basis for recovery under the procuring clause theory because the theory does not apply to sales representative agreements. Right. The reason why they only submitted those pages and not the rest, and why they never filed those pages in the district court either, is because the pages before and after point out that this deal – this argument, which was a quote from a case, dealt with their tort claim, which was they – one of their claims was there was bad – bad faith termination of – of Shanduvi in this case. What I argued, because you can see there's quotation marks around it, was that I'm citing cases – I think the New York or the Sixth Circuit, I can't remember which offhand – but they do track, by the way – there's another way to see this that tracks our summary judgment motion that we filed, so it's in writing so everyone can see it, in the arbitration. This didn't go to the contract claim. Their tort claim, there was a bad faith termination. What I did was I read a bunch of cases in the – in the summary judgment motion. We cited the cases. You'll see the language tracks, as I said, saying that there is no bad faith termination. There is excess language in those cases. So, yes, but keep in mind the following, Your Honor. What's telling is that Shanduvi doesn't cite anything in his opening statement. The plaintiff. What he did was he picked up some words which were in a court case, which I was quoting, dealing with bad faith termination. Alito, where did New York law come from? Was that contained in the MRA itself? Correct. Absolutely. Well, if you choose New York law as the substantive law that is to be applied, why does it necessarily limit the arbitrator to simply New York law on contracts? Why can't he apply New York law on quasi-contract theories? I think under the right circumstances, he could, Your Honor. What we think is improper here is under these circumstances, where the parties, both sides, but including Shanduvi, which is the key point, in its pre-arbitration brief, opening statement, through its testimony, its post-closing briefs, it never used the word quasi-contract at all. Had they argued quasi-contract, including what Your Honor said, sometimes people argue on the alternative. Right. Then it would have been in the case, and I wouldn't have been standing here. And I gather if the arbitrator had just gotten it wrong on the law, you wouldn't be standing here either. Correct. You're just arguing you didn't have a chance to present your case. Absolutely. Because all the cases that talk about it say that we're entitled to a fundamentally fair hearing. The cases talk about that you're entitled to fair notice. The fact, Your Honor, is if it was in the case, how come Shanduvi, who was suing for millions of dollars, didn't put it in its pre-arbitration brief, which was, as I said, filed one business day before. It was 22 pages long. How come he didn't mention it in his opening statement, which went on for hours? How come through 11 days of testimony, he never mentioned it? How come in his post-closing brief, the first one was 68 pages and the second one was 56 pages, the words quasi-contract aren't in there? I think he made a tactical decision not to do it. Because although legally you can argue in the alternative, as I said, I wouldn't be here if those words were in there, you could also, as a trial tactician could say, I don't want my people to take an inconsistent position. It makes them less credible. And what happened? Every one of his witnesses said, this contract covers it. The only dispute is how we interpret the contract. As I said, what's fascinating here is the thought obviously entered the arbitrator's mind because he asked one of their most important witnesses, Robert Shaw, by the way, are you telling me that you provided services outside the contract? And Shaw said, no. All the services were provided pursuant to the contract. And that's what makes this case what I think is exceptional and why we're here, and why we were entitled to notice the they didn't put it in the case. The Quasi contract shows up in none of their papers, and there are hundreds of pages. It shows up in none of their testimony, none of their oral argument. Clearly for us, if we were on notice that we were going to be sued for $4 million approximately for that, we could have put in our arguments. And that's all that we're saying. We should have been entitled to put in our arguments. The arbitrator then could have accepted or rejected it. And if he rejected it, I agree that it's a differential standard. We never had that opportunity. And that's why, as I said, it's particularly improper. It's also improper because the AAA rules, the AAA Guide to Commercial Arbitration, which we cited in our brief, talks about how the arbitrator is not supposed to do legal research. If you have a question, you're supposed to go to the parties and let them address it. Here, and again, I wouldn't have been here if the arbitrator would have sent a letter saying, I've now sat through 11 days of testimony. I think there's an issue that no one addressed. Can everybody address it? Should we reopen the hearing? He didn't do that. He cited cases that nobody cited. So we didn't get a chance to present our argument that it was incorrect. The — in addition, the AAA Code of Ethics, which we talked about, talks about how arbitrators are supposed to give everyone a fair opportunity to present their arguments. We got no opportunity to present our argument. And as I said, that's what we think. That's why I'm here, because this is an extreme situation. So I assume your argument would have been a purely legal one? Yeah. On the actual record that had been presented, I mean, applied to the fact — I guess what I'm asking is, would you have sought to present additional evidence? Are you satisfied with the state of the record? The thrust of our argument is we would have liked to have made a legal — the legal argument. Clearly, what I've asked some different — if I knew it was in the case, when their testimony, which, as I said, through Mr. Shondubi himself, they had an expert witness saying the contract — Shondubi — Mr. Shondubi said the contract covered this. Their expert witness, a lawyer, said the contract covered it. They called a former Lucent employee, Mr. Mink. He says it covers it. Okay. But that — Judge Thomas asked you whether or not you would seek to have adduced additional evidence, had you known — I would have asked some additional — I apologize. Your answer is you would have examined differently. Right. Because I would have made it — I would have made people take a position. Yeah. Are you saying that the contract covered it? Are you saying the contract didn't? Although you can plead inconsistent, absolutely. The reason why lawyers and tacticians many times don't want to take that position in front of a judge or jury or a fact-finder is it puts people on the spot. So I could have asked the question. Are you saying that it's covered or it's — it isn't covered? All right. Is your legal argument set forth in your appellate brief in this case before us? Yes. Can we take it into account as we reconsider whether or not the award should be given? Absolutely. Although our point, Your Honor, is not that, in my opinion, the correct legal analysis is not because it's through an arbitration. If it was through a district court, what the three of you say is, of course, the definitive law. It's still the definitive law, but here the reason why it's at an angle is we were entitled to make our arguments to this arbitrator, and we were entitled to that. So this Court could accept or reject it, but that's not what — that's not what the arbitration was. The point — the reason why we put it into the brief was not to guarantee that we were going to win, but to show you that we had something to say, that this wasn't just ephemeral. We did clearly have things to say. New York law, for example, says that a finder's fee contract can't be oral and that you can't excuse it by estoppel and that you can't get around it by quantum error. That's the heart of our argument. We were — maybe we're right, maybe we're wrong, but the reason why we were prejudiced here is we were never given that opportunity. You're down to three minutes or so. Then I'll step by and keep it for the record. Thank you. We will hear from Sean Newby, Mr. Russo. Thank you, Your Honor. May it please the Court, my name is Jack Russo. With me today is my partner, Tim Howe, as well as the CEO of Sean Newby Corporation, James Sean Newby. We do have a few slides, Your Honor, but I'm going to make three points here and I'm going to walk you through why counsel, in saying he never had the opportunity to present and did not present this exact argument, is false as demonstrated by this record. He made this argument before the hearing. He made this argument during the hearing. He made the argument after the hearing. He made the argument after the transcripts were done in post-closing briefs. I will cite to you different parts of the record where the quasi-contract argument was sought to be rebutted by counsel. He is standing before you today making false hearsay statements about a record, the 11 volumes of which are not before you. He chose not to put them in.  I'll just get to the record. Yes, Your Honor. We can't settle the food fight here. We can't. I agree, Your Honor. Where did these citations come from that we heard from Mr. Riffer? The citations in the record, Your Honor. No, the citations in the arbitration award that were not raised, according to Mr. Riffer, either by him or by you. Your Honor, the citations are in the record based on briefing that occurred to the arbitrator. All right. So you disagree with his argument. I disagree entirely. Very good. All right. Well, let's get to it. Let's get to it then. Your Honor, we're going to make three points here, Your Honor. The first point is the standard of review in this case and in all arbitration cases, and particularly in commercial arbitration cases, is the narrowest known to the law. That's settled law. We're aware of that. The scope is the issue, right? I'll get to the documents. Okay, Your Honor. Let's walk through the documents. If you go to ER-147, Your Honor, the first citation, counsel was standing before you today saying that quasi-contract was never discussed. Never discussed. ER-147 is his brief where he quotes, and Your Honor quoted him previously, where he says at page 10 of his summary judgment brief, he says there is no basis for recovery under quasi-contract. The argument was there in front of the arbitrator. That's before the hearing at 147. Now, let's go to his argument is that he, that's a case citation when he was discussing your tort claims and had nothing to do with an independent response to a quasi-contract claim. What's your response to that? Yes, Your Honor. In our brief, in our opening brief, which he characterizes as just three theories, we actually said this contract, under their view that no commissions are paid, becomes an illusory contract. If so, it's void. We stated specifically in our brief. If so, they're entitled to even larger damages under non-contractual theories. That was before the arbitrator. During the course of the terms of the non-contractual theories, did you say, use the words quasi-contract in your brief? No, Your Honor. We used things like services rendered. Just as the district court found here when they said what was before the district court in the original complaint, which they had notices on, is services rendered for which fair compensation was due. That's the exact terminology that is often used in lieu of just using the words quasi-contract or something. So your brief didn't say quasi-contract. You say that they're fair notice because you asserted non-contractual remedies. What's your next brief? Correct, Your Honor. What's your next argument? If you walk through then, if we turn then from 147 to page 454, 454 is in volume number 2. And at 454, this is when he is then briefing again. This is a brief that he submits on April 15, 2003. Before the arbitration is closed, he makes the same argument again. He is saying that during the arbitration hearing, quasi-contract was never at issue. Yet before, on summary judgment, he raises this issue of quasi-contract. After the testimony of 11 days occurs, he raises again the production products case. And he says again, the sales representative here, Shundubi, and this is at ER 454, page 17 of his brief of April 15, 2003, the sales representative may not recover under a theory of unjust enrichment. The existence of a valid and enforceable written agreement precludes recovery on such a quasi-contract theory. So he is here saying that after 11 days of testimony, he is citing irrelevant law to the arbitrator, which he claims he had no notice of. It doesn't make any sense, Your Honor. Classic quasi-contract and unjust enrichment are different. I mean, you can categorize it as such a theory, but the elements are different. Your Honor, it's all before this arbitrator. This was a 50-year veteran who had done many arbitrations. He heard 11 days of testimony. I can characterize that testimony as James Shundubi talking about how much work he did. And I don't mean to quibble with you. What's your next citation? By the way, this production products case, was that one of the cases that was cited in the award? Yes, it is, Your Honor. It's cited in the award. It's cited in the sixth in this case. On the quasi-contract aspect of the award? I can turn to it. I don't know if it was. That's fine. You answer the question. Yes, Your Honor. You got 147, 454. What's the next citation? The next citation, Your Honor, I would use would be 531. And the reason I would use 531 in Volume No. 3 is that's where our — the only indication of my opening statement, or one of the indications of my opening statement that we were going much broader than just a pure contract theory is the slide I used during the opening, which is in the record at 531, where I say, Lucent repeatedly reassured Shundubi Corporation. Repeatedly reassured. Reliance, estoppel. Those arguments were made. For hearsay statements by counsel to somehow say they weren't made is refuted by the record here. Then we go to 574, and this is really the ultimate statement. After all the briefing is over, the briefing that was previously done, the arbitrator allowed another round of briefing. And at 574, the post-closing brief, Lucent Corporation, May 7, 2003, again, again, makes the argument, again, production products, the sales representative may not recover under a theory of unjust enrichment. For counsel to say in front of you that the idea of quasi-contract and unjust enrichment was never discussed when it was raised in the summary judgment, in the opening brief, in the opening statement, in the closing brief, and the post-closing brief, five times, it just strains credulity to say that this arbitrator somehow picked a theory out of thin air that did not occur, Your Honor. You don't have the 11 volumes before you. What you have is a very detailed, 19-page decision by this arbitrator, which under the standard of review, under the standard that this Court applies, would pass every form of scrutiny, and certainly passes the minimal deferential scrutiny that exists in this case. So let me ask your position. Do you think the contract covered this or not? We went into the arbitration certainly with the view that the contract covered. And the reason for it, Your Honor, is Mr. Shandubi was told by Mr. Stocker during a phone call, you will be paid under this contract. The arbitrator recognized that and said there was an acknowledgment by Stocker. We believe that the contract did apply. We believe there was an interpretive issue about whether Appendix C of the contract trumped other language in the contract. The arbitrator ultimately said, I'm not going with that approach. I'm going with an alternative approach. The alternative approach is this quasi-contract New York law unjust enrichment theory. Your Honor, Your Honor can only overturn this award if you find something on the face of the award where the arbitrator applying New York law somehow recognized what counsel is arguing, which is somehow the contract is crystal clear in their favor. It says in Lucent's view it would have to say Shandubi doesn't recover anything for all the work it's did, and the arbitrator ignores that. That's not what we have here. We have a reasoned arbitration award where a 50-year veteran who's been in practice, you know, he was 70-odd years old. He had many arbitrations. He looked at all the facts and evidence after 11 days and made a decision. Your Honor, I think you know all these cases, so I'm going to flip through them. But it's clear in this case that the argument about notice is a false argument. It's a false argument as found by the district court. The district court in this case, interpreting his own decision to compel this case to arbitration, makes a finding. This finding is important, Your Honor, because it can't really be ignored by Lucent saying this case somehow didn't involve unjust enrichment or services rendered. The district court says in this case the complaint had raised all of the issues that they're saying somehow didn't raise, including the general issue under 1738.010. So I want to turn to that page of the district court's finding because I think the law of this case, which can't be disagreed with, is that this particular district judge who had had the original complaint in this case says at page 3 of the decision, which is ER-967, Shanduvi brought several causes of action, including breach of contract, bad-faith termination, payment for services rendered at Lucent's request, a common count, and violation of California Civil Code 1738.10etsec, which regulates manufacturer-representative contracts and agreements. The district court, interpreting what was before him when he compelled it to arbitration, gave the very notice to Lucent that they're complaining about here. At bottom, what they're saying is if an opening brief is submitted in arbitration, regardless of what happens during the 11 days of arbitration, and, indeed, a lot happened during the 11 days of arbitration, including many questions from the arbitrator himself, somehow that opening statement locks the case down, locks it completely down. Well, the analogy would be, I guess, to what, a Rule 16 order that we would enter in a Federal civil case, which would narrow the focus of the issues and the pleadings would fall out of the case, and there isn't anything like that. That's correct, Your Honor. That's the point. Counsel, an experienced trial lawyer, never said at the beginning of the case to Mr. Sondericher, Arbitrator Sondericher, I want a stipulation and order of record that we're only litigating these three issues. And, in fact, he would also have to say on the 1738.010 issue, we're only litigating and we would have disagreed with this, we're only litigating the 1738.015 sub-issue about willfulness. That's false. We would have never agreed to it. It wasn't part of the case. It wasn't what happened. It's why the post-hearing brief is 60-odd pages, because based on all the testimony that came in, there was a lot more. And if you contrast the post – if you contrast the closing briefs with the opening briefs, you'll see there's a much more expansive recitation, including their reply to our brief saying there was wrongful conduct here. That's going to get me, Your Honor, to some of my last points here, because I think this is a case – this case is a case where Your Honors have the opportunity to send a message that commercial arbitration awards have to be respected. This is a frivolous appeal, and I'm going to prove that if you give it to me. Well, it's not in this sense. I mean, both parties, it seems to me, litigated primarily the question of whether or not the contract covered it. That was the focus of this. And the only question here on terms of notice is, was there enough notice as to the fact that if the arbitrator found against you, did you have the alternative award in the form of a quasi-contract award? And we just have to gauge that by the documents here. It seems to me that's a fairly narrow inquiry. It's not a – this isn't a – it doesn't strike me as a send-the-message case. Your Honor, if you'll give me a minute, I'll try to explain why I think it is, because I think they've had more than enough notice. They had notice for more than a year. This testimony was not 11 days straight. This testimony, some of which was in New York, some of which was in California, went on for about a year. The whole process of the arbitration was over a year. What I want to get to, and I apologize that the slide is not here, but I'm going to get to it, is certainly we had the California Manufacturers' Representative Act theory in the case, and that theory includes failure to enter a contract. But if Your Honor looks at the level of scrutiny, and this is where I want to get to in terms of level of scrutiny. I think we understand the level of scrutiny. Well, I would like to – a chance, Your Honor, just for a minute. You briefed it. If you applied a strict scrutiny test to this, if you take a view that's contrary to Kyocera, that somehow reasoned award means you must strictly construe and strictly review this record, which is the opposite of all the standards of review from the federal courts under the FAA. Even then, the fact that the arbitrator finds a violation, by Lucent, of a non-waivable California statute, that they must enter a written agreement covering this particular Apple deal, and they didn't, that put into play quasi-contract and estoppel. That put that into play. What remedy would the arbitrator have to go to under Rule 45 that calls for just inequitable remedies, other than quasi-contract, when he finds a violation of the statute? Except they're talking about fair notice. That's what this case is all about. And you're saying – you're trying to parse the nuances. I'm not saying you're incorrect on this, but I'm just saying that you have to go pretty far. If you're litigating estoppel, you litigate it differently. You do litigate it differently. Then if you're – if somebody's making – asserting straight out a theory of quasi-contract, you do litigate that differently. You may litigate it differently in arbitration, Your Honor. In my experience, it all comes in. It all comes in, and it's not constrained. There is no Rule 16 order. There are no pleadings. There's certainly no order from an arbitrator that I'm only going to hear this evidence. The fact goes the other way. The rule is, General, I'll hear everything. And the point I'm making about strict scrutiny, if the level of scrutiny was there has to be an underlying legal theory for how this arbitrator came up with this remedy. There is in this case the statute, 1738.010, says Lucent had to, under California law, have a written agreement covering this transaction. The arbitrator found they violated the statute. Once that's in the case, and clearly they have notice of it. As I said, Judge White makes clear and our pleading – and our briefs make clear that the whole statute's in the case. The notice of arbitration had the entire statute clipped to it as an exhibit. The entire statute was clipped to it. That theory of quasi-contract arises from there is no contract. There's a violation of the statute. The statute talks about damages. Damages are in the nature of quasi-contract damages, because there is no contract. They violated a statute that they shouldn't have violated. That gives rise to the attorney's fees award. That's – that was a challenge here that I don't hear raised here by counsel. But they violated the statute entitling Shunduby to attorney's fees. And my argument here of why – The California statute to bootstrap in New York common law? California statute to establish the violation for failure to enter a contract. The arbitrator then applies damages under New York law, correct? That's correct, Your Honor. That's what happened here. It wouldn't be different under New York and California anyway. New York and California law are the same on quasi-contract. Damages are awarded. Counsel's argument that he wanted to make arguments to the arbitrator that would have prevented this outcome, he did make those arguments. He made them five times. They were rejected five times. They were made in five different briefs, as shown by the record citations. The reason I think it is a send-the-signal case, Your Honor, is very simple. This case was – Shunduby claimed 18 million-plus attorney's fees in this case. The arbitrator ended up awarding 3 million, not 4 million, 3 million-plus attorney's fees. 18 million in attorney's fees? No, no. No. In total, the total damages saw were 18 – Damages plus attorneys. 18 million plus additional attorney's fees. The arbitrator awarded 3 million plus accrued interest plus attorney's fees. They awarded a fraction of what Shunduby had sought in this case. They're here claiming that after 11 days of arbitration and a year, they got sandbagged. Somehow they were surprised. Even in the face of five different instances that I cited to you, where they themselves note quasi-contract unjust enrichment and the face of the district court's own ruling, the complaint that was before them included numerous noncontractual theories. To go with their view, or even to go with the view that there's a colorable argument here, is to allow millions of commercial arbitration cases to plague the Federal courts with a view that, you know what, I'm an unhappy litigant after 11 days of arbitration, commercial arbitration, under the AA. I'm unhappy. I won't put the record before you. I'll just characterize it. I'll say no one ever used those words. I'll say the arbitrator never raised this issue. In fact, there's another record citation where they do put in testimony where the arbitrator is asking a former employee of Lucent, and I'll find the citation for you, Your Honor, where it's clear the arbitrator is raising on his own the question, if the contract doesn't apply, what's the appropriate remedy here, given that Lucent had repeatedly represented to Shunduby that Shunduby was going to get paid? The arbitrator himself is raising that in the record, Your Honor. And that's in the record here. I believe it's at 349-350. And any trial lawyer just hearing at ER 349-350, this question from the arbitrator has to raise a question in their own mind, is the arbitrator raising this issue? Is the arbitrator saying what's going on here? I don't know if you want me to read this to you, Your Honor, 349-350, but it's clear the arbitrator is raising this point. And the reason I'm here saying attorney's fees are appropriate, Your Honor, is really along the nature of something that Judge O'Scanlan said in a case not too long ago, that if there isn't finality in arbitration awards, and the case is Arizona Electric Power v. Berkeley, 59F3rd 988. I believe it starts at page — well, the printout page is page 4. Quote, the finality of arbitral awards must be preserved if arbitration is to remain a desirable alternative to courtroom litigation. The work of Shanduvi Corporation, this case, started December 1997. It started about eight years ago. The arbitration completed a couple of years ago. We are still in litigation for work that was done in 1997, 1998, and thereafter. We are still in litigation trying to collect that money for Shanduvi Corporation. With all due respect, Your Honor, I think this is a frivolous case. Thank you. Thank you, counsel. Your time has expired. Thank you. Mr. Referee, you have reserved some time. I just want to hit the high points, the — and correct the record. For the math, the arbitrator awarded $3 million. He awarded 9 percent pre-judgment interest, and that's how you get to the — and $300,000. Oh, we understand that. Okay. Got you. All right. Mr. Russo said that five times this claim got mentioned. Each of those five times was a snippet from a brief on our side. Each one of those, if you look in the record, deals with wrongful termination, which is the point that I made when I got up here originally. The products case is cited in the arbitration award. Did the arbitrator say at one point in his 19-page reasoned decision that if he had been asked to make that determination, he would have found that the termination was wrongful here? No. He came out the other way. He said that he was asked to find whether it was wrongful, and he said that it wasn't wrongful under New York law. And this is — that's when he cites this products case. It's at ER 33. So when you ask Mr. Russo, was it cited in the arbitration award, the answer is correct, which is what Mr. Russo said. But it's cited under the wrongful termination, which he ruled in Lucent's favor. The products case is not cited in the quasi-contract analysis of the arbitrator's award, which starts at ER 36. Okay. Let's accept your point that this thing — this was only referenced fleetingly and was never asserted, which is probably true. I suppose the more fundamental issue is, isn't it implied in this kind of an arbitration that everything's on the table? I agree that in general everything is on the table, Your Honor. But here, when the plaintiff talks about, as I said, when everything is in one direction, I find it easier to say that something's legitimately on there if it's a complementary theory. This is exactly the opposite. Quasi-contract only applies when there's not a contract regarding the subject matter. Here, the plaintiff, Sean Duvey, took, and we believe one of two things happened. Either for tactical reasons, decided he didn't want to have his people testify otherwise, or he didn't think of the theory. And if he didn't think of the theory, it's unfair for us to lose $4 million because he never put it in. It would make, to me, just as under advocacy, no sense that we should say, by the way, here are all the issues in the case. And I do want to, at one thing, before I jump into that, by the way, Mr. Russo talked about that he didn't want to get bound by his opening brief. Fine. Although I think that sets the issues. And there were 11 days of testimony. He filed a 68-page closing brief and a 56-page rebuttal. And quasi-contract's not mentioned in any of those either. Everybody assumed there was a contract that covered it. Exactly. And the reason why here, to your point, now I want to address it dead on, is why that's so significant is everybody, 100 percent of the testimony assumed that the contract covered it. That's why it's fundamentally unfair to say, in effect, to our side, by the way, the next time you've got an arbitration, even though the testimony's 100 percent, you should go spend your money and go brief something that's not even in the case. But if the whole provision of arbitration is to submit the dispute, going back to the arbitrator for resolution, what is so wrong with the arbitrator doing, you know, doing some equitable justice here in resolving the dispute that was submitted to him? I don't quarrel with that. What I quarrel with is that he should have given notice. Because, remember, the AAA rules themselves say the arbitrator's not supposed to do legal research. If you have a legal question, you're supposed to raise it to the parties. And 100 percent of the arbitrator's legal citations on quasi-contract and stop-all dealt with things that were never briefed. 100 percent of the arbitrator's cases were not there. So we never could say, by the way, that case doesn't really hold that, or that case points out another problem, as I said, some of which we talked about in our briefs. That was the point, which is, I don't have a quarrel on that. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, Tallman